**United States District Court**
For the Northern District of California

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7

8                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

9   KEVIN SPORER,

10           Plaintiff,                          No. C 08-02835 JSW

11      v.

12   UAL CORPORATION and DOES 1-50,        **ORDER GRANTING**
     inclusive,                            **DEFENDANT'S MOTION FOR**
13                                          **SUMMARY JUDGMENT**

         Defendants.
14   _____/

15

16       Now before the Court is the motion for summary judgment and/or partial summary

17   judgment filed by Defendant UAL Corporation ("UAL").  The Court finds that this matter is

18   appropriate for disposition without oral argument and it is hereby deemed submitted.  *See* Civ.

19   L.R. 7-1(b).  Accordingly, the hearing set for August 28, 2009 is HEREBY VACATED.

20   Having considered the parties' pleadings and the relevant legal authority, the Court hereby

21   GRANTS UAL's motion for summary judgment.[1]

22

23

24       [1] The Court sustains UAL's objection to the portion of paragraph five of the
     Declaration of Kevin Sporer to the extent he states he was not told that UAL could monitor
25   and view his work email account and the portion of paragraph six of his declaration to the
     extent he states that he knew that no one else would see his email and it was not subject to
26   examination by UAL.  These statements contradict his prior deposition testimony that he was
     aware UAL had access to and could monitor his computer system and work email account.
27   The Court finds that these portions of his declaration are a sham affidavit and are thus
     stricken under *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991).
28   With respect to the remainder of UAL's evidentiary objections and the objections submitted
     by Plaintiff Kevin Sporer, some of the evidence objected to was not necessary to the
     resolution of this motion.  Therefore, the Court need not rule on the admissibility of such
     evidence at this time.  To the extent the Court relied on evidence objected to in resolving
     UAL's motion, the objections are overruled.

United States District Court

For the Northern District of California

**BACKGROUND**

In this action, Plaintiff Kevin Sporer ("Sporer") contends that UAL invaded his privacy by viewing a pornographic video attached to an email Sporer sent from his work account to his personal account and that UAL wrongfully terminated his employment.

Sporer began working for UAL as a mechanic in 1987.  As a mechanic, Plaintiff was a member of the International Association of Machinists union and his employment was governed by a collective bargaining agreement ("CBA").  In 1998, Sporer became a supervisory employee at UAL and his employment was no longer governed by a CBA.  All of UAL's supervisors are at-will employees.  (Declaration of Kathleen Tetrev ("Tetrev Decl."), ¶ 7.)  Sporer testified that as a supervisor, his employment was no longer governed by a CBA.  (Declaration of Althea V. Bovell ("Bovell Decl."), Ex. B (Sporer Deposition) at 139:9-17, 140:2-6.)  Sporer's employment application provided that if he were hired, his employment would be "at-will." (Bovell Decl., ¶ 11, Ex. I.)  On May 29, 1987, Sporer signed UAL's "Terms and Conditions of Employment," which contained the same "at-will" provision.  (*Id*., ¶ 12, Ex. J.)  UAL's PeoplePolicies, to which all employees had access, provides that UAL's employees are at-will. (Tetrev Decl., ¶ 7, Ex. F.)

UAL's email policy provides, in pertinent part:

> Message content must always be professional.  It is strictly prohibited to transmit or store any messages or data that compromises or embarrasses the Company, contains explicit or implicit threats, obscene, derogatory, profane or otherwise offensive language or graphics, defames, abuses, harasses, or violates the legal rights of others.

(Bovell Decl., Ex. B (Sporer Depo.) at 106:16-25.)  The policy further provides that it was "established in order to maximize the benefits of UAL information resources and minimize potential liability." (*Id*. at 105:20-106:4.)  Sporer admits to having received reminders about UAL's email policy.  (*Id*. at 105:9-19.)  Sporer understood that the content of his emails should not be less than professional.  (*Id*. at 107:10.)

UAL's Information Security Policy for Regulation 5-18 and Electronic Communications Standards policy also prohibit the transmission of obscene, derogatory, profane or otherwise

United States District Court

For the Northern District of California

1    offensive language or graphics.  (Tetrev Decl., ¶¶ 8, 11, Exs. G, I.)  UAL's information security

2    policies are established to: "(1) protect the company's investment in its human and financial

3    resources expended to create its systems; (2) safeguard its information; (3) reduce business and

4    legal risk; and (4) maintain public trust and the reputation of the company."  (*Id*., ¶ 9.)  Under

5    the heading "Privacy and Monitoring," UAL's Electronic Communications Standards provides:

6        The company reserves the right to monitor all e-mail on the company e-mail
         system – In other words, as an employee you should assume no right of privacy
7        on e-mail transmitted on the company system.  In addition, and messages sent or
         received, for business or personal reasons, may be disclosed to law enforcement
8        officials or third parties without your prior consent.

9    (*Id*., Ex. I.)

10       Sporer used a work-issued computer to perform his work at UAL.  (Bovell Decl., Ex. B

11   (Sporer Depo.) at 47:22-48:3, 100:8-10.)  As far back as at least January 2006, a Warning

12   Notice appears on all UAL computers when they are turned on.  The Warning Notice informs

13   employees that the computer system is a private computer system and that is protected and

14   monitored by a security system.  Employees must click "OK" on the screen to clear the

15   Warning Notice and proceed with use of the computer.  (Aganon Decl., ¶ 9, Ex. B.)

16       On August 10, 2007, Sporer received an email entitled "Amazing oral talent!!!!!!!!!!" on

17   his work email account from his friend, Harry Clancy ("Clancy").  (Tetrev Decl., ¶¶ 2, 4, Ex. C;

18   Bovell Decl., Ex. B (Sporer Deposition) at 177:15-178:8.)  Sporer sent this email from his work

19   computer, over UAL's server, to his personal email account.  (Tetrev Decl., ¶¶ 2, 4, Ex. C;

20   Bovell Decl, Ex. B (Sporer Deposition) at 178:17-179:5, 229:11-14.)  The email contained a

21   pornographic movie of a woman orally copulating a man in various acrobatic positions.  (Tetrev

22   Decl., ¶¶ 2, 4, Ex. C.)

23       A few minutes after transmitting the email to his personal email account, Sporer emailed

24   Clancy: "Thank you for the spiritual lift. However, I need you to use my home E-mail address

25   .... Apparently United Air Lines, Inc. has a strict computer security policy and these babies will

26   get me fired."  (Tetrev Decl., Ex. K.)

27       During a routine audit, UAL's Information Security department came across the

28   pornographic email Sporer sent to his personal email account.  (Declaration of Romel Agnanon

3

United States District Court

For the Northern District of California

1  ("Aganon Decl."), ¶ 5.)  The Information Security department forwarded the email to the

2  Manager of Labor and Employee Relations, Kellee Allain.  (*Id*., ¶ 7.)  Ms. Allain forwarded the

3  email to Kathleen Tetrev.  (Bovell Decl., Ex. D (Tetrev Deposition) at 26:7-14.)

4      In October 2002, Information Security had caught Sporer sending another inappropriate

5  email from his work account.  (Aganon Decl., ¶ 6.)  The email, entitled "Skeleton Fun,"

6  contained a video of skeleton cartoon figures engaging in sexual intercourse.  Sporer was

7  counseled that the email he sent to his personal account from work was inappropriate.  (Bovell

8  Decl., Ex. B (Sporer Deposition) at 164:8-17, 173:1-7, 169:17-170:21, 171:8-172:7.)  Sporer

9  was told that UAL's security system had found this email and that the email was inappropriate.

10  (*Id*. at 166:10-167:10.)

11      During UAL's investigation of Sporer's transmission of the email in August 2007,

12  Sporer admitted that: (1) this was his second violation of UAL's email policy; (2) he was aware

13  of UAL's Zero Tolerance Policy; (3) he had signed UAL's computer security agreement, and

14  (4) the title of the email "Amazing oral talent!!!!!!!!!!" was suggestive.  (*Id*. at 202:1-4, 207:11-

15  16, 209:16-24.)  Sporer also admitted that, based on the title of the email and who had sent it to

16  him, that the email might not have been suitable for work.  (*Id*., Ex. N.)

17      UAL terminated Sporer for transmitting this pornographic email.  (Declaration of

18  Kathryn Cassley, Ex. F.)[2]  Sporer's transmission of this email violated UAL's Zero Tolerance

19  Policy on Harassment and Discrimination, People Policies Code of Conduct article numbers 37

20  and 27, UAL's Regulations 5-18, and Information Security Policies.  (*Id*.)

21                                            **ANALYSIS**

22  **A.    Legal Standard on Motion for Summary Judgment.**

23      A court may grant summary judgment as to all or a part of a party's claims.  Fed. R. Civ.

24  P. 56(a). Summary judgment is proper when the "pleadings, depositions, answers to

25  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

26  genuine issue as to any material fact and that the moving party is entitled to judgment as a

27

28      [2] United contends that it also terminated Sporer for violating the confidentiality
agreement that he signed in connection with the investigation of the August 2007 email.

**United States District Court**
For the Northern District of California

1    matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" only if there is sufficient evidence

2    for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*,

3    477 U.S. 242, 248-49 (1986).  A fact is "material" if the fact may affect the outcome of the case.

4    *Id*. at 248.  "In considering a motion for summary judgment, the court may not weigh the

5    evidence or make credibility determinations, and is required to draw all inferences in a light

6    most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.

7    1997).

8         A principal purpose of the summary judgment procedure is to identify and dispose of

9    factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986).  The

10   party moving for summary judgment bears the initial burden of identifying those portions of the

11   pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of

12   material fact. *Id.* at 323.  Where the moving party will have the burden of proof on an issue at

13   trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for

14   the moving party. *Id.*  Once the moving party meets this initial burden, the non-moving party

15   must go beyond the pleadings and by its own evidence "set forth specific facts showing that

16   there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The non-moving party must "identify

17   with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*,

18   91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251

19   (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a

20   genuine issue of triable fact").  If the non-moving party fails to make this showing, the moving

21   party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

22   **B.    UAL's Motion for Summary Judgment.**

23        **1.    Sporer's Employment Was At-Will.**

24         "Under the traditional common law rule ... an employment contract of indefinite

25   duration is in general terminable at 'the will' [of] either party." *Tameny v. Atlantic Richfield*

26   *Co.*,  27 Cal. 3d 167, 173 (1980).  Under California law, an at-will employment relationship

27   may be terminated by either party, at any time, without cause, for any or no reason.  See Cal.

28   Labor Code § 2922; *see also e.g. Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 336 (2000);

United States District Court

For the Northern District of California

1  *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 677 (1988) ("Labor Code section 2922

2  establishes a presumption of at-will employment if the parties have made no express oral or

3  written agreement specifying the length of employment or the grounds for termination."). 

4  Limitations on terminating the employment relationship do exist, but they are a matter of the

5  parties' specific agreement, express or implied in fact.  "The mere existence of an employment

6  relationship affords no expectation, protectible by law, that employment will continue, or will

7  end only on certain conditions, unless the parties have actually adopted such terms."  *Guz*, 24

8  Cal. 4th at 350.

9       The presumption of at-will employment "may be overcome by evidence of contrary

10  intent."  *Foley*, 47 Cal. 3d at 677.  In the absence of an express contract provision, the following

11  factors may be used to determine whether there is an implied contract that an employee may

12  only be terminated for cause: "the personnel policies or practices of the employer, the

13  employee's longevity of service, actions or communications by the employer reflecting

14  assurances of continued employment, and the practices of the industry in which the employee is

15  engaged."  *Id*. at 680.  Sporer concedes that he signed an employment agreement in 1987 that

16  contains an at-will provision.  Nevertheless, Sporer contends that several changes in his status

17  with UAL redefined his employment relationship. (Opp. at 10.)  Sporer developed an

18  understanding that no one at UAL was terminated without good cause.  (Declaration of Kevin

19  Sporer, ¶¶ 12-13.)  Sporer also relies on unidentified UAL policy governing the process by

20  which investigations and terminations occur and that he worked for UAL over 20 years.  (Opp.

21  at 11-12.)

22       As noted above, Sporer does not dispute that he signed an employment agreement with

23  an at-will provision.  The existence of a progressive discipline policy is insufficient to rebut the

24  presumption of at-will employment.  *See Davis v. Consolidated Freightways*, 29 Cal. App. 4th

25  354, 367 (1994).  Working for an employer for many years is similarly insufficient to rebut the

26  presumption.  *See Guz*, 24 Cal. 4th at 341-42 ("an employee's mere passage of time in the

27  employer's service, even where marked with tangible indicia that the employer approves the

28  employee's work, cannot alone form an implied-in-fact contract that the employee is no longer

6

**United States District Court**

For the Northern District of California

1   at will") (emphasis omitted).  Moroever, Sporer has not submitted any evidence to support his

2   subjective belief that he could only be terminated for cause.  Therefore, the Court finds that

3   Sporer has not submitted sufficient evidence to establish any agreement not to terminate him

4   without good cause.[3]  Accordingly, the Court grants UAL's motion for summary judgment on

5   Sporer's breach of contract claim.

6          Because the Court finds Sporer's employment was at will, his claim for breach of the

7   implied covenant based on his termination allegedly without cause similarly fails.  *See*

8   *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App.4th 1359, 1391 (1999) ("An at-will

9   employee cannot use the implied covenant to create a for cause employment contract where

10  none exists."); *see also Foley*, 47 Cal. 3d at 699 n.39 ("with regard to an at-will employment

11  relationship, breach of the implied covenant cannot logically be based on a claim that a

12  discharge was made without good cause").

13          **2.      Sporer's Claim for Termination in Violation of Public Policy Fails.**

14          To succeed on a claim for wrongful termination in violation of public policy, a plaintiff

15  must demonstrate that his or her termination involved a matter "that affects society at large

16  rather than a purely personal or proprietary interest of the plaintiff or employer; in addition, the

17  policy must be 'fundamental,' 'substantial' and 'well established' at the time of the discharge."

18  *Gantt v. Sentry Insurance*, 1 Cal. 4th 1083, 1090 (1992).  Courts must therefore determine

19  whether the employee's discharge "affects a duty which inures to the benefit of the public at

20  large rather than to a particular employer or employee."  *Foley v. Interactive Data Corp.*, 47

21  Cal. 3d 654, 669 (1988).  Cases in which courts have found violations of public policy generally

22  fall into four categories: (1) refusing to violate a statute, (2) performing a statutory obligation,

23  (3) exercising a statutory right or privilege, and (4) reporting an alleged violation of a statute of

24  public importance.  However, the tort of wrongful discharge in violation of public policy is not

25  limited to these four categories.  *Gould v. Maryland Sound Industries, Inc.*, 31 Cal. App. 4th

26

27          [3] Even if Sporer had created a question of fact regarding whether his employment
    was at-will, UAL submits uncontradicted evidence demonstrating that it had good cause to
28  terminate him.  Sporer violated UAL's policies regarding the transmission of pornographic
    emails.  Moreover, this was Sporer's second violation of these policies.

United States District Court
For the Northern District of California

1   1137, 1147 (1995); *see also Phillips v. Gemini Moving Specialists*, 63 Cal. App. 4th 563, 570-

2   71 (1998).

3          Sporer contends that his termination was wrongful because it was in violation of his

4   right to privacy and in violation of 18 U.S.C. § 2511, *et seq*., which prohibits the interception

5   and disclosure of wire, oral, or electronic communications.  To establish an invasion of privacy

6   under California law, a plaintiff must demonstrate: "(1) a legally protected privacy interest; (2)

7   a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant

8   constituting a serious invasion of privacy."  *Hill v. National Collegiate Athletic Assn.*, 7 Cal. 4th

9   1, 39-40 (1994).  "Whether plaintiff has a reasonable expectation of privacy in the

10  circumstances and whether defendant's conduct constitutes a serious invasion of privacy are

11  mixed questions of law and fact.  If the undisputed material facts show no reasonable

12  expectation of privacy or an insubstantial impact on privacy interests, the question of invasion

13  may be adjudicated as a matter of law."  *Id*. at 40.

14         A reasonable expectation of privacy "is an objective entitlement founded on broadly

15  based and widely accepted community norms" and "the presence or absence of opportunities to

16  consent voluntarily to activities impacting privacy interests obviously affects the expectations

17  of the participant."  *Id*. at 37.  A California court examining the expectation of privacy with

18  respect to use of a work computer found that "the use of computers in the employment context

19  carries with it social norms that effectively diminish the employee's reasonable expectation of

20  privacy...."  *TBG Ins. Servs. Corp. v. Superior Court*, 96 Cal. App. 4th 443, 452 (2002).  The

21  court noted that in 2001, "more than three-quarters of this country's major firms monitor,

22  record, and review employee communications and activities on the job, including their

23  telephone calls, e-mails, Internet connections, and computer files."  *Id*. at 451.  The court further

24  noted that there can be serious consequences for employers who do not monitor their

25  employee's communications and activities on the job.  *Id*. at 452 n. 7.  Moreover, having

26  advance notice that a company monitors computer use for compliance with the company's

27  policies, including a prohibition against use for "obscene or other inappropriate purposes," and

28  having an opportunity to consent to such monitoring, further diminishes any reasonable

8

United States District Court

For the Northern District of California

1  expectation of privacy.  *Id*. at 452-53.  Here, UAL had a policy of monitoring its employee's

2  computer use, warned employees that they had no expectation of privacy on e-mail transmitted

3  on the company system, and provided its employees with a daily opportunity to consent to such

4  monitoring.  Sporer fails to submit any evidence to the contrary.  In light of such circumstances,

5  the Court finds that Sporer had no reasonable expectation of privacy in the use of his work

6  email.

7  Sporer's contention that UAL violated 18 U.S.C. § 2511 by monitoring his work email

8  does not fare any better.  The statute excepts surveillance of communications in which there is

9  consent.  "Congress intended the consent requirement to be construed broadly."  *Griggs-Ryan v.*

10  *Smith*, 904 F.2d 112, 116 (1st Cir. 1990) (quoting *United States v. Amen*, 831 F.2d 373, 378 (2d

11  Cir. 1987)).  Therefore, the statute exempts from coverage, not only surveillance of those

12  persons who explicitly consent, but also of those who implicitly consent.  *Id*.  Implied consent

13  may be inferred "from surrounding circumstances indicating that the [party] knowingly agreed

14  to the surveillance."  *Id* at 116-117 (quoting *Amen*, 831 F.2d at 378).  Circumstances showing

15  consent will ordinarily include "language or acts which tend to prove ... that a party knows of,

16  or assents to, encroachments on the routine expectation that conversations are private."  *Id*. at

17  117.

18  In *Griggs-Ryan*, the court found implied consent where the conversant had been

19  repeatedly informed that all incoming calls were being monitored.  *Id*. at 117-118.  Similarly,

20  here, Sporer had been repeatedly informed that UAL monitored use of its computers, including

21  emails.  In fact, in order to turn on and use his work computer, Sporer had to click "OK" to

22  clear the Warning Notice, informing him that the computer system is monitored.  Moreover,

23  Sporer knew from past experience that UAL monitors work email accounts.  In 2002, he was

24  counseled for sending an email with a sexual video from his work account to his personal

25  account.  The email Sporer wrote to Clancy in 2007, just minutes after he received the email

26  makes clear that Sporer was aware of UAL's strict computer policy and that UAL monitored

27  work email accounts.  Sporer admitted that the title of the email was suggestive, and that, based

28  on the title of the email and who had sent it to him, the email might not have been suitable for

9

**United States District Court**
For the Northern District of California

1    work.  Nevertheless, Sporer forwarded the email to his personal account in violation of UAL's

2    policies rather than deleting it.  Therefore, the Court finds that based on the circumstances that

3    Sporer knew his work email account was not private and was being monitored by UAL, and

4    thus his consent may be implied.  Accordingly, UAL did not violate 18 U.S.C. § 2511 by

5    monitoring Sporer's work email account.[4]

6         **3.        Sporer is not Entitled to Punitive Damages.**

7         Because the Court finds that Sporer may not maintain his claims for breach of contract,

8    breach of the implied covenant of good faith and fair dealing, and wrongful termination in

9    violation of public policy, Sporer has no basis on which he could recover punitive damages.

10   Accordingly, the Court grants UAL's motion for summary judgment.

                              **CONCLUSION**

12        For the foregoing reasons, the Court GRANTS UAL's motion for summary judgment.

13        **IT IS SO ORDERED.**

14

15   Dated: August 27, 2009                    _____
                                               JEFFREY S. WHITE
16                                             UNITED STATES DISTRICT JUDGE

---

28        [4] Because the Court finds that Sporer impliedly consented, the Court need not
determine whether another exception, ordinary course of business, is applicable as well.